UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| G.T.G. CONSTRUCTION CO., INC.,<br><br> Plaintiff,<br><br>  v.<br><br>GOEL SERVICES, INC., *et al.*,<br><br> Defendants. | Civil Action No. 12-1129 (JEB) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff G.T.G. Construction Co., Inc., an earth-moving services company, brought this action claiming that it is owed more than $130,000 for equipment and services it provided on a construction project at Ronald Reagan Washington National Airport. G.T.G.'s work on the project was provided pursuant to an agreement with a subcontractor, Defendant Goel Services, Inc., a company that was, in turn, providing services to Defendant Lagan Virginia LLC, the contractor for the project. G.T.G. also asserts claims against Zurich American Insurance Company, which issued a surety bond to Lagan guaranteeing the performance of its payment obligations on the project.

Goel has now moved to stay the case arguing that G.T.G. must first exhaust administrative-dispute procedures. G.T.G. responds that its agreement with Goel included no terms requiring it to submit to such dispute resolution and that any such procedures set forth in Goel's separate agreement with Lagan do not flow down to G.T.G.'s agreement. As the Court finds that Goel has failed to offer any evidence of an agreement with G.T.G. to arbitrate – or any evidence that the G.T.G.-Goel agreement incorporated the dispute-resolution terms set forth in Goel's agreement with Lagan – it will deny Goel's Motion.

1

**I.     Background**

According to G.T.G.'s Complaint, in the summer of 2011, G.T.G. submitted a proposal to Goel to provide equipment and operators for a project the latter was working on at the Airport. See Compl., ¶¶ 7-8.  The proposal contained G.T.G.'s daily rental rates and charges, which were affirmed in a Goel purchase order.  See id., ¶¶ 8, 9.  On or about October 3, 2011, G.T.G. began work on the project site; work orders were completed on a daily basis indicating the specific equipment that would be required each day, and the charge for the work was invoiced each day. See id., ¶¶ 11, 12.  G.T.G. received payment for the work performed through part of November 2011; however, in mid-November, while continuing to request additional work from G.T.G., Goel stopped paying G.T.G.'s invoices.  See id., ¶ 12.  G.T.G. billed Goel $279,354.62 for the excavation work on the project, but only received payment for $148,840.36, leaving a balance due to G.T.G. of $130,514.26.  See id., ¶ 14.

On July 9, 2012, G.T.G. filed this suit against Goel demanding payment for its work and asserting a breach-of-contract claim (Count I) and, alternatively, a *quantum meruit* claim (Count III).  See id., ¶¶ 23-28, 37-44.  Additionally, G.T.G. asserted a payment-bond claim (Count II) against the remaining parties, Lagan and Zurich, who it claims are jointly and severally liable under a bond for the larger airport project.  See id., ¶¶ 29-36.  Goel now moves to stay this litigation pending the exhaustion of the Administrative Disputes Procedure set forth in Lagan's construction contract with the Metropolitan Washington Airports Authority (MWAA).

**II.     Analysis**

Defendant Goel's Motion cites a number of cases in support of its stay argument.  See Mot. at 3-5.  In each of these cases, there was a contractual provision within the agreement between the subcontractor and the contractor that incorporated terms from the contractor's

agreement with the owner.  See, e.g., Seal & Co., Inc. v. A.S. McGaughan Co., Inc., 907 F.2d 450, 453 (remanding case for imposition of stay and referencing dispute-resolution provision within subcontract whereby subcontractor agreed to be bound to contractor to same extent that contractor was bound to owner); Norment Sec. Grp., Inc. v. Travelers Cas. and Ins. Co., 505 F. Supp. 2d 97, 105 (D.D.C. 2007) (granting stay and pointing to dispute-resolution provision in subcontractor's agreement requiring subcontractor to await resolution of contractor's claims against owner before subcontractor could assert claim against contractor); Skanska USA Bldg., Inc. v. Smith Mgmt. Constr., Inc., 967 A.2d 827, 836 (Md. App. 2009) (remanding with order to stay and finding that subcontractor was required to comply with dispute-resolution provisions clearly set forth in plain language of parties' governing agreement).  Here, however, Goel provides the Court with no factual support for its claim that G.T.G. is bound by the terms in the Lagan contract.  Instead, it asserts without any justification that G.T.G. "agreed to be bound to the Administrative Disputes Procedure in the Construction Contract for disputes due to MWAA's actions or involving the Contract Documents."  Mot., ¶ 9; see also Reply at 2 (repeating same assertion).

     G.T.G., in response, disputes Goel's contention that the parties have agreed to any such terms, claiming that the "totality of the subcontract" with Goel was "a price proposal, a purchase order, and a series of job work orders (attached as Exhibit C) none of which expressly or implicitly incorporates any terms of any upstream contracts."  See Opp. at 2.  G.T.G. contends that because the agreement with Goel "contains no provisions regarding alternative dispute resolution," "GTG never contracted (explicitly or implicitly) to be bound by GOEL's upstream administrative disputes procedure."  See id. at 3.  Goel fails to respond to this argument in any meaningful way, instead merely stating in a footnote that it "denies GTG's allegation in the

Complaint and its Memorandum in support of its Opposition that the Proposal, Purchase Order, and Job Work Orders formed a contract between GTG and Goel Services." Reply at 2 n.1. Significantly, Goel fails to point to a "flow-down" or "pass-through" provision in its agreement with G.T.G. that would bind it to the dispute-resolution terms embodied in the separate agreement between Lagan and MWAA. In the absence of any support for its claim that G.T.G. is bound by administrative dispute-resolution procedures, the Court will deny Goel's Motion.

   Shortly after Goel filed its Motion, G.T.G. moved for default judgment, claiming that Goel's Motion to Stay was not a responsive pleading, and, as a result, it had failed to timely file a response to the Complaint. See Motion for Default Judgment at 1-2. "While a motion to stay is generally considered to be outside of the ambit of the Rule 12(b) motions that suffice as responsive pleadings, they are often considered by courts prior to the filing of an answer." Sorensen v. Head USA, Inc., No. 06-1434, 2006 WL 6584166 at *1 (S.D. Cal. October 13, 2006); see also Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1360 (3d ed. 2006) ("A motion to stay also is not within the ambit of the defenses enumerated in Rule 12(b). Nonetheless, relying on their inherent power, federal courts often consider these motions in an effort to maximize the effective utilization of judicial resources and to minimize the possibility of conflicts between different courts."). Where, as here, Goel's Motion to Stay was a timely and proper filing and it is clear that Goel is not ignoring the lawsuit, entry of default judgment would be inappropriate. See Sorensen, 2006 WL 6584166 at *1 (noting that even if court were to enter default judgment, "that default would almost certainly be vacated because Defendant appeared to be acting under the good-faith, but mistaken, belief that its motion to stay qualified as a defense under Rule 12(b). Thus, its failure to file a timely responsive pleading would be excusable.").

### III.    Conclusion

The Court, accordingly, ORDERS that:

1. Defendant Goel's Motion to Stay is DENIED;

2. Plaintiff's Motion for Default Judgment is DENIED; and

3. Defendant Goel shall file a responsive pleading on or before September 19, 2012.

IT IS SO ORDERED.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  September 5, 2012